UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-14168-Civ-MOORE
MAGISTRATE JUDGE P.A. WHITE

BOBBY BYRD, JR.,                    :

    Petitioner,                 :

v.
                                    :        REPORT OF
WALTER A. McNEIL,                            MAGISTRATE JUDGE
                                    :

    Respondent.                 :
_____   :


Introduction


    Bobby Byrd, Jr., a state prisoner, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his conviction for driving while license suspended (habitual offender) entered following a jury verdict in Martin County Circuit Court case no. 04-1464-CF.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of the petition (DE#1) with supporting memorandum and exhibits (DE#4), the Court has the respondent's response to an order to show cause (DE#15) with multiple exhibits (DE#16), and the petitioner's reply (DE#18) and amended reply (DE#20).


Claims


    The petitioner challenges his convictions and sentences on four specified grounds, as follows:

1.  His due process rights were violated where the
    state trial court failed to consider the first
    claim raised in his Rule 3.850 postconviction
    motion, which claimed that counsel was ineffective
    for failing to file a pretrial motion to suppress
    all evidence that was the product of an illegal
    stop. (DE#1:1-4).

2.  He was denied effective assistance of counsel,
    where his lawyer failed to timely file a pretrial
    motion to suppress all evidence that was the
    product of an illegal stop. (DE#1:5).

3.  He was denied effective assistance of counsel,
    where his lawyer failed to file a second amendment
    to the suppression motion, or otherwise lodge an
    objection during the hearing on the petitioner's
    amended suppression motion, when testimonial
    evidence by the arresting officer revealed the fact
    that the petitioner was stopped because he was
    suspected of driving under the influence. (DE#1:8).

4.  His due process rights were violated by the trial
    court's failure to adequately consider the merits
    of claim three above. (DE#1:11).

### Procedural History

The petitioner was charged by Information with driving while
license revoked-habitual offender, in violation of Fla.Stat.
§322.34(5). (DE#16:Ex.1-3). The petitioner gave a post-arrest
statement which was the subject of a pre-trial motion to suppress
and amendment thereto. (DE#16:Ex.8,10). The petitioner proceeded to
trial, where evidence and testimony was adduced regarding the
issues underlying the motion to suppress. (DE#48:T.8).[1] Thereafter,
the trial denied the motion to suppress. (DE#48:T.91-92). At the
close of the evidence, the defense's renewed motions for judgment
of acquittal which were denied by the trial court.

_____

[1]The letter "T" in this Report followed by a page number refers to the
trial transcripts filed by the respondent in this case as DE#48.

2

(DE#48:89,95,151). The petitioner was then found guilty as charged, following a jury verdict. (DE#16:Ex.12). He was adjudicated guilty and sentenced as a habitual felony offender term of 10 years in prison. (DE#16:Ex.13).

The petitioner appealed, raising three claims of trial court error. (DE#16:Ex.15). On September 19, 2007, the Fourth District Court of Appeal affirmed the conviction and sentence by published opinion. Byrd v. State, 964 So.2d 806 (Fla. 4 DCA 2007); (DE#16:Ex.22). For purposes of the federal, one-year statute of limitations, the state court judgment became final, at the latest on December 19, 2007, ninety days after the convictions and sentences were affirmed on direct appeal. See 28 U.S.C. §2244(d)(1)(A);[2] Jimenez v. Quarterman, 555 U.S. ____, ____, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)(explaining the rules for calculating the one-year period under §2244(d)(1)(A)); see also Burton v. Stewart, 549 U.S. ____, 127 S.Ct. 793 (2007).[3]

---

[2]The statute provides that the limitations period shall run from the latest of —

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

[3]In Burton, a §2254 petition had been filed challenging the petitioner's 1994 conviction, then later (after exhausting remedies following resentencing) the petitioner filed a petition challenging his 1998 resentencing. Burton, 127 S.Ct. at 795-796. The Court held that the sentence is the judgment, and that the limitations period does not begin until both the conviction and sentence become final by the conclusion of direct review or the expiration of the time for seeking such review. Id. 798-799.

Prior to the conviction becoming final, the petitioner returned to the trial court, filing his first motion for postconviction relief pursuant to Fla.R.Cr.P. 3.850, asserting that he was improperly classified as a habitual traffic offender and a habitual felony offender. (DE#16:Ex.24). On January 23, 2007, the trial court entered an order striking the motion on the basis that it lacked jurisdiction over the case because the petitioner's case was currently pending on direct appeal. (DE#16:26).

Once again, before his conviction became final, the petitioner returned to the trial court on October 18, 2007, filing a second Rule 3.850 motion, raising the identical issue challenging his classification as a habitual offender. (DE#16:Ex.27). On October 24, 2007, the trial court dismissed the motion because it did not contain a proper oath as required by Fla.R.Cr.P. 3.850(c). (DE#16:Ex.29).

Yet again, before his conviction was final, the petitioner returned to the trial court on November 28, 2007, filing a third Rule 3.850 motion, raising the identical issue raised in the previous postconviction motions. (DE#16:Ex.30). After the state's response thereto, the petitioner filed a motion voluntarily dismissing this Rule 3.850 motion. (DE#16:Ex.33). On January 8, 2008, the trial court entered an order dismissing the motion without prejudice to the filling of a future Rule 3.850 motion, provided that it was timely filed as required by the rule. (DE#16:Ex.34). No appeal therefrom was filed. Thus, the trial court's order became final on February 8, 2008, when time expired for filing a notice of appeal. See Carey v. Saffold, 536 U.S. 214, 219-220 (2002)(finding claim is "pending" for entire term of state court review, including those intervals between one state court's judgment and filing of an appeal with a higher state court); Moore

4

<u>v. Crosby</u>, 321 F.3d 1377, 1380 (11th Cir. 2003); <u>Evans v. Chavis</u>, 546 U.S. 189, 191 (2006); <u>Wade v. Battle</u>, 379 F.3d 1254, 1262 (11th Cir. 2004).

The federal limitations period once again ran unchecked for over **7 months**, from February 8, 2008 until September 11, 2008, when the petitioner filed a fourth Rule 3.850 motion for postconviction relief, raising the same claims as claims two and three of this federal petition, as listed above. (DE#16:Ex.35). On November 20, 2008, the trial court entered an order, applying <u>Strickland</u>, but ultimately dismissing the motion as legally insufficient, but without prejudice to filing an amended, legally sufficient motion. (DE#16:Ex.36). No appeal therefrom was filed. Consequently, the trial court's order became final on December 20, 2008, when time expired for filing a notice of appeal.  <u>See</u> <u>Carey v. Saffold</u>, <u>supra</u>; <u>Moore v. Crosby</u>, <u>supra</u>; <u>Evans v. Chavis</u>, <u>supra</u>; <u>Wade v. Battle</u>, <u>supra</u>.

The limitations period again ran unchecked for over **ten days,** from December 20, 2008 until December 30, 2008, when the petitioner filed a fifth Rule 3.850 postconviction motion, raising the same claims as claims two and three of this federal petition, as listed above. (DE#16:Ex.37). On July 16, 2009, the trial court entered an order denying the Rule 3.850 motion on the finding that the claims are without merit, barred, or conclusively refuted by the record. (DE#16:Ex.41). That denial was subsequently *per curiam* affirmed on appeal, <u>Byrd v. State</u>, 29 So.3d 307 (Fla. 4DCA 2010), with the mandate issuing on March 26, 2010. (DE#16:Ex.46-47).

While the foregoing appeal was still pending on appeal, the petitioner filed two petitions for writ of mandamus, seeking an order directing that the trial court specify on what basis it had

5

denied claim one of the petitioner's Rule 3.850 motion.[4]

Meanwhile, the federal limitations period again ran unchecked for over **2 months**, from March 26, 2010 until June 9, 2010, when the petitioner then came to this court, filing the instant <u>pro</u> <u>se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.[5]

<u>Threshold Issues</u>

A.   <u>Statute of Limitations</u>

In its response to the order to show cause, the respondent rightfully does not challenge the timeliness of the instant petition. <u>See</u> 28 U.S.C. §2244(d)(1)-(2). The petition and amendment were filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n.9 (11 Cir. 2007). As noted previously, less than one year of the federal limitations period ran during which no state court proceedings were pending. Thus, it appears that this federal petition, filed within a year from the time the petitioner's conviction became final, is timely. <u>See</u> <u>Artuz v. Bennett</u>, 531 U.S. 4 (2000) (pendency of properly-filed state

---

[4]An unsigned mandamus petition dated in December 2008 was provided by the petitioner. (DE#4:Ex.A). However, review of the Fourth District Court of Appeals on-line docket, at <u>http://www.4dca.org/</u> reveals that the two mandamus petitions of record were received by the Clerk on November 23, 2009 and December 21, 2009, which were assigned case nos. 4D09-4749 and 4D09-5137. The first case was dismissed by order of the court on December 11, 2009. The latter petition was denied on the merits on February 12, 2010.

[5]<u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

postconviction proceedings tolls the AEDPA limitations period).

## B. Exhaustion and Procedural Bar

The respondent argues in its response to the order to show cause that the petitioner is not entitled to review on the merits of certain claims that are unexhausted, See 28 U.S.C. §2254(b)(1) and (b)(1)(A),[6] and prospectively procedurally barred from federal habeas corpus review. While it appears that claims one and four, specifically alleging violations of due process during the suppression proceeding and the Rule 3.850 proceeding, may not have been technically exhausted before the state courts, subjecting them to a procedural bar,[7] this Court need not reach this difficult question in this particular case. Since the petitioner cannot prevail on the merits of his claims, there is no need to belabor the procedural issues here.[8]

---

[6]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979).

[7]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

[8]Even if certain claims are technically unexhausted, this Court will exercise the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997; Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).

While this Court acknowledges that the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated. See Lambrix v. Singletary, 520 U.S. 518 (1997). See also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8 Cir. 1999)(stating that judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner and the procedural bar issues are complicated), cert. denied, 528 U.S. 846 (1999); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8 Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best.") In this case, judicial economy dictates that the petitioner's claims be addressed on the merits.

## Facts

The facts adduced at trial reveals as follows. On October 29, 2004, at approximately 11:30 p.m., Sgt. Deborah Busbee with the Florida Highway Patrol ("FHP") was working road patrol in her marked FHP unit in Martin County, Florida. (T.25-26). At that time, she was traveling westbound on State Road 76, crossing the turnpike overpass near Locks Road, when she made a U-turn to return to town. (T.27). Prior to effectuating the U-turn, she heard a vehicle behind her also crossing over the turnpike overpass. (T.44). From the top of the overpass, that vehicle had an unobstructed view of Sgt. Busbee's marked patrol car which was at the bottom of the overpass. (T.44). At that time, there were no other vehicles on the road. (T.51). According to Sgt. Busbee, she looked in her rear view mirror, up the overpass hill, to a distance of a quarter of a mile, when she observed a vehicle approaching, traveling at a rate of 60

to 65 mph.[9] (T.27). The posted speed limit on that road was 55 mph. (T.27). After the vehicle crossed the overpass and saw the marked police vehicle, Sgt. Busbee's observed that the vehicle braked hard, reducing its speed to 25-30 mph. (T.28).

Sgt. Busbee followed the petitioner, and eventually stopped him because she suspected, in part, that he might be driving under the influence based on his speed and his braking. (T.45). However, she conceded that once she approached the petitioner, he did not display any of the indicators of intoxication. (T.45). Notwithstanding, according to Sgt. Busbee, once she turned on her vehicle's blue lights and stopped petitioner, she was obligated to insure that he was, in fact, a licensed driver. (T.46). Although she cited petitioner for driving with a suspended license, she had discretion whether to cite him for speeding and did not do so, because she was "working impaired drivers," which the petitioner was not. (T.52-54). According to Sgt. Busbee, at a minimum, she would have given petitioner a verbal warning, explaining the reason for the stop, but she believes she gave him a written warning. (T.47-49).

Sgt. Busbee conceded that while her police report indicated the petitioner was 5'11", the Division of Motor Vehicle report indicated that "Bobby Byrd" was 6'1", and his license suspended as a habitual traffic offender on August 18, 2004. (T.61). However, during redirect examination, Sgt. Busbee clarified that the petitioner provided her with information regarding his height and weight. (T.68). She further conceded she knew the petitioner as "Bobby Byrd," but was unaware whether he was a "Junior." (T.61).

---

[9] She testified that her twenty years of training and experience enable her to determine the rate of a vehicle's speed based on mere observation. (T.50-51).

Ava Nowak, a Senior Liaison Officer with the Department of Highway Safety and Motor Vehicles ("DHSMV") testified that she has worked with numerous state departments concerning traffic violations. (T.74-75). Regarding the petitioner's DHSMV report introduced at trial, she testified that it contains the photograph, name, date of birth, and other personal information kept in the regular course of business by the DHSMV. (T.74-76). According to Nowak, the petitioner's license was revoked as a habitual traffic offender on September 7, 2004. (T.82-83). Nowak reviewed the petitioner's DHSMV report and indicated that entries on 2/8/00, 9/4/01, and 4/12/01 qualified as predicate offenses for purposes of the habitual offender classification. (T.84-85). During cross-examination, Nowak also explained that in the event any errors in a DHSMV report are discovered, it is part of her duties to correct see that they are corrected. (T.86-87).

The defense called Amesia Davis to testify that she knew the petitioner for over 20 years, and that his complete name was Bobby Byrd, Jr. (T.116). According to Davis, the petitioner never went by the name Bobby Byrd, explaining that the petitioner's father was known as Bobby Byrd. (T.116). However, during cross-examination, Davis conceded that the petitioner's signature appearing under the photograph on the petitioner's DHSMV report said "Bobby Byrd" not "Bobby Byrd, Jr." (T.117-18).

In rebuttal, Deputy Dillon Murphy testified that he has known the petitioner for seven years, and has spoken with petitioner on four or five occasions. (T.123-24). According to Deputy Murphy, the petitioner told him his name was "Bobby Byrd," and has never referred to himself as "Bobby Byrd, Jr." (T.123-24).

## Standard of Review

As will be recalled, the petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in Williams v. Taylor, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. See Id. at 409-11. See also Knowles v. Mirzayance, ____ U.S. ____, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.). Findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d 840, 844 (11 Cir. 2007), cert. denied, 553 U.S. 1007 (2008).

As will be demonstrated in more detail infra, the petitioner is not entitled to vacatur on the claims presented.[10] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner a fundamentally trial and due process of law. The petitioner therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal

---

[10]Briefly, as narrated previously in this Report, the evidence against the petitioner was more than sufficient to support his conviction. The petitioner has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. In other words, no denial of due process has been demonstrated. To the contrary, it is clear after independent review of the record that the petitioner received a fair trial, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

Discussion

A. Ineffective Assistance of Trial Counsel

        The petitioner claims that he received ineffective assistance of trial counsel for two enumerated reasons. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id. at 688; Heath v. Jones, 941 F.2d 1126, 1130 (11 Cir. 1991). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. A habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), citing, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the Strickland standard was

13

incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Knowles</u>, 129 S.Ct. at 1420. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>.

The identical claims of ineffective assistance of trial counsel raised here were presented by the petitioner to the state courts in his Rule 3.850 motion. The court applied <u>Strickland</u> and expressly found that Rogers' claims were without merit, barred or conclusively refuted by the record. (DE#16:Ex.41). The trial court's ruling was subsequently affirmed on appeal. <u>See</u> <u>Byrd v. State</u>, 29 So.3d 307 (Fla. 4 DCA 2010)(table); (DE#16:Ex.46). For the reasons stated below, the trial court's denial of the petitioner's Rule 3.850 motion is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and its result should not be disturbed. 28 U.S.C. §2254(d)(1); <u>Williams v. Taylor</u>, <u>supra</u>.

Where the state courts during the postconviction proceeding did not address on the merits the exact constitutional claim raised in this federal petition, the standard established by the AEDPA would not be applicable, requiring a <u>de novo</u> review. <u>See</u> <u>Cone v. Bell</u>, ___ U.S. ___, 129 S.Ct. 1769, 1784 (2009), *citing*, <u>Rompilla v. Beard</u>, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)(de novo review where state courts did not reach prejudice prong under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)); <u>Wiggins v. Smith</u>, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(same). <u>See also</u> <u>Romine v. Head</u>, 253 F.3d 1349, 1365 (11 Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1011 (2002). This Court, therefore, conducted such heightened review, and Rogers is nonetheless not entitled to federal habeas corpus relief on his

claims in that the grounds are meritless for the reasons expressed below.

In **claim two,** the petitioner asserts that he was denied effective assistance of trial counsel, where his lawyer failed to timely file a pretrial motion to suppress "all"[11] evidence that was the product of an illegal stop. (DE#1:5). In related **claim three**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to file a second amendment to the suppression motion, or otherwise lodge an objection during the hearing on the petitioner's amended suppression motion, when testimonial evidence by the arresting officer revealed the fact that the petitioner was stopped because he was suspected of driving under the influence. (DE#1:8).

In his Amended Rule 3.850 motion, where the claims were raised, the petitioner argued that defense counsel's "eleventh hour" filing of the motion permitted the prosecution to add new, pretextual evidence for why Sgt. Busbee effectuated the traffic stop, which were not previously provided by Sgt. Busbee in her probable cause affidavit. (DE#37:9). The petitioner suggests the late filing of the motion to suppress and amendment thereto aided, rather than hurt, the prosecution. (Id.). From petitioner's arguments, it appears that he wanted the motions filed and a hearing had thereon prior to trial. (Id.:10).

The petitioner then alleges that since there was no probable cause or reasonable suspicion to support his stop or custodial

---

[11]It should be noted that the petitioner does not identify here what else should have been suppressed, aside from his statements to Sgt. Busbee, which were argued in the state forum. Even if there were other, unidentified evidence, any argument by counsel in this regard would fail for the same reasons that suppression of the petitioner's statements failed. Consequently, the petitioner cannot establish prejudice under <u>Strickland</u> and the state court rejection of the claim should thus not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

interrogation, that the statements he provided to Sgt. Busbee should have been suppressed. (Id.:10). According to the petitioner, Sgt. Busbee testified at trial that the reason she initially decided to stop the petitioner was because she suspected he was driving under the influence. He claims that once Sgt. Busbee realized that was not the case, any continued detention or interrogation was unlawful. (Id.:11-12). The petitioner alternatively appears to argue that Sgt. Busbee's initial motive for executing the stop was pretextual, as conceded by her when she indicated at trial that her suspicions of the petitioner driving under the influence were dispelled once she approached his vehicle. (Id.:13).

First, review of the record reveals that the arguments the petitioner suggests should have been raised by counsel earlier were, in fact, fully explored at the suppression proceeding. In fact, as conceded by the petitioner, the court noted that if it found there was no probable cause to support the stop, then it would suppress whatever needs suppressing. Consequently, the petitioner cannot establish deficient performance or prejudice arising from counsel's failure to pursue the suppression proceedings earlier, nor for failing to further explore and/or otherwise amend the suppression motion mid-trial regarding the lack of probable cause or pretextual nature of the stop. Alternatively, even if counsel had pursued filing and then having a hearing on the motions prior to trial, no showing has been made either in the state forum or this habeas proceeding that the motion would have been granted, resulting in the suppression of evidence, including petitioner's statements. Thus, he cannot establish prejudice under Strickland. Further, he also cannot establish prejudice, because even if counsel had sought, as suggested by the petitioner, to amend the motion mid-hearing, and assuming further the court had accepted the amendment, given the evidence adduced at the hearing,

16

once again, no showing has been made that the motion to suppress would have been granted. Thus, for this second, alternative reason, the claims fail.

Regardless, the claims are devoid of merit. In the state postconviction proceeding, where the identical claims were raised, the trial court reviewed the trial transcript where the suppression evidence was established, and then denied relief on the claims for the following reasons:

> ...While the defendant claims that various parts of the trooper's testimony for some reason required an amended motion, as the defendant admits in his motion and as the state has responded, the trial court decided the motion on the testimony of the trooper....
>
> Thus, from the record presented by the defendant, it is clear that the court decided the motion to suppress on any grounds that may have appeared during the trial, and was prepared to acquit the defendant should suppression be called for. There is nothing more the trial attorney could have requested that would have given a better or more in-depth consideration of the motion than was granted. Nor has the defendant shown anything which would have possibly changed the outcome of the hearing or the trial. Allegations that counsel was ineffective for not pursuing meritless arguments are legally insufficient to state a claim for post-conviction relief. *See Melendez v. State*, 612 So.2d 1366, 1369 (1992)(holding counsel cannot be deemed ineffective for failing to make meritless argument); *Teffeteller v. Dugger*, 734 So.2d 1009, 1023 (Fla. 1999)("Trial counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding."). The defendant has failed to prove either prong of *Strickland*.
>
> However, the court need not reach the merits of this issue, as the suppression hearing was fully raised at trial, denied at trial, properly preserved, heard on appeal, *and addressed in an opinion by the appellate court*, which also held there was no error....The defendant cannot now raise this issue disguised as ineffective assistance of counsel...The issues are barred.
>
> All of the defendant's claims are without merit, barred or conclusively refuted by the record, no evidentiary hearing is required.

(DE#16:Ex.41:3-4). The trial court's ruling was thereafter affirmed on appeal. See Byrd v. State, 29 So.3d 307 (Fla. 4 DCA 2010); (DE#16:Ex.46). Such finding was not error, as discussed in detail *infra.*

The stop by police of an occupied automobile for a traffic violation constitutes a "seizure" of "persons" within the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10 (1996). Therefore, to justify a warrantless seizure and an investigative stop, the government must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. Terry v. Ohio, 392 U.S. 1, 21-3 (1968).[12] "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." United States v. Lyons, 403 F.3d 1248, 1253 (11 Cir. 2005)(internal quotation marks

---

[12]It is well-settled that police/citizen encounters fall within one of three categories: (1) consensual encounters where an officer elicits a citizen's voluntary cooperation which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion that a person has committed or is committing a crime, the "Terry" stop; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause. See U.S. v. Santibanez Garcia, 132 F.Supp.2d 1338, 1341-45 (M.D.Fla. 2000) and cases cited therein. See also United States v. Espinosa-Guerra, 805 F.2d 1502, 1506 (11 Cir. 1986)(identifying investigative stops and full scale arrests among tiers of police-citizen encounters which implicate the Fourth Amendment). The law in Florida is the same. See Popple v. State, 626 So.2d 185, 186 (Fla. 1993)(identifying and defining the three levels of police-citizen encounters).

omitted); <u>United States v. Gordon</u>, 231 F.3d 750, 758 (11 Cir. 2000); <u>United States v. Allison</u>, 953 F.2d 1346, 1349-50 (11 Cir. 1992). On the facts of this case, no constitutional violation occurred.

The trial court during the suppression proceeding apparently found the testimony of Sgt. Busbee credible and truthful. As will be recalled, the petitioner argued in the Rule 3.850 proceeding, as well as, on direct appeal, that Sgt. Busbee lacked probable cause to stop his vehicle, and thus any statements made after the stop should have been suppressed. Through cross-examination, the petitioner attempted to establish that Sgt. Busbee could not possibly have estimated that he was traveling at an excess, unlawful speed that night. However, Sgt. Busbee was unequivocal that, given her over twenty years experience and training, she could determine that the petitioner was, in fact, speeding at he crossed over the overpass. The trial court denied the suppression motion, believing the officer's testimony that the petitioner was going 60 to 65 mph in a 50 mph zone, which was sufficient to effectuate a traffic stop when he came over the overpass and then applied the brakes suddenly, after apparently seeing the police vehicle. (DE#48:T.91-92). The court further found that, although one of the bases for Sgt. Busbee stopping the petitioner was a "hunch" that he might be driving under the influence because of the nature of his driving pattern, it was not the sole reason. (<u>Id</u>.:91-92). Relying on Florida case law, the court further found that Sgt. Busbee was more than qualified to discern the speed at which the petitioner was traveling. (<u>Id</u>.:T.29).

Accordingly, the fact that defense counsel failed to further argue as suggested by the petitioner here and in the state forum, and/or failed to seek suppression early on in the criminal proceeding, does not indicate that counsel's performance was

constitutionally ineffective in that the above-recited facts demonstrate that he would not have been successful in his endeavors. There is no duty to raise issues which have little or no chance of success. See Knowles v. Mirzayance, 129 S.Ct. at 1422 (the law does not require counsel to raise every available non-frivolous defense). See generally, Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection).

Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000). See also Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002).

### B.  Due Process Violations

The petitioner claims his Fourteenth Amendment due process rights were violated for two specified reasons.

The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law." U.S. Const. Amend. XIV. Here, petitioner was not deprived of life or property; he is therefore entitled to due process only if he was deprived of "liberty" within the meaning of the Fourteenth Amendment. Determining whether one was deprived of liberty presents a unique challenge with prisoners, who "have already been deprived of their liberty in the ordinary sense of the term." Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

Further, "[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." Spencer v. State of Texas, 385 U.S. 554, 563-64 (1967); see also Phillips v. Wainwright, 624 F.2d 585, 587-90 (5th Cir. 1980)(considering whether trial court's exclusion of expert witness testimony rendered trial fundamentally unfair in violation of due process). In considering such a due process claim, "[w]e examine the record ... only to determine whether the error was of such a magnitude as to deny fundamental fairness to the criminal trial, thus violating the due process clause". Woods v. Estelle, 547 F.2d 269, 271 (5th Cir.) (internal quotation marks omitted), cert. den'd, 434 U.S. 902 (1977). Consequently, if a state prisoner alleges he was denied due process, a federal habeas court's review is limited to violations of federal due process rights. See Woods v. Estelle, 547 F.2d 269, 271 (5th Cir. 1977).

To the extent the petitioner's claims might allege a federal due process violation, no relief is warranted. The limitation on federal habeas review to claims of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976).

In **claim one**, the petitioner asserts that his due process rights were violated by the trial court who failed to consider the first claim raised in the petitioner's Rule 3.850 motion alleging counsel was ineffective for failing to file a pretrial motion to suppress all evidence that was the product of an illegal stop. (DE#1:1-4). According to the petitioner, this claim was raised in a petition for writ of mandamus, filed with the appellate court, requesting that the trial court specifically address and/or give

21

reasons for denial of the claim. Even if so, as discussed previously in this Report, the court was able to consider all of the petitioner's arguments. Even if counsel had raised the issue further as alleged by the petitioner in the Rule 3.850 proceeding, no showing has been made that the suppression motion would have been granted. Further, no due process violation has been established, as confirmed by the appellate court's dismissal and/or denial of the mandamus petition. Even if he had established such a violation, it is clear that any such error was not of such a magnitude as to affect the fundamental fairness of the proceedings. Consequently, the petitioner cannot prevail on this claim.

In **claim four**, the petitioner asserts that his due process rights were violated by the trial court's failure to adequately consider the merits of claim three of this federal petition, which was raised in the Rule 3.850 proceeding as claim two.[13] (DE#1:11). It should first be noted that this is a mere reiteration of the arguments raised in relation to claims two and three above and should be denied for the reasons expressed therein. Second, no due process violation has been demonstrated.

It should also be noted this claim is not cognizable in this federal habeas corpus proceeding. It is beyond dispute that federal habeas corpus review encompasses errors of constitutional magnitude. See 28 U.S.C. §2241(c); 28 U.S.C. §2254(a).[14] See Estelle

───────────────

[13]Moreover, for the reasons additionally expressed by the respondent in its response, this claim is also barred from review here.

[14]The terms of 28 U.S.C. §2241(c) provide in pertinent part that the writ of habeas corpus shall not extend to a prisoner unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3). The terms of 28 U.S.C. §2254(a) provide that a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

v. McGuire, 502 U.S. 62 (1991)(federal habeas corpus relief does
not lie for errors of state law). The Eleventh Circuit has
specifically held that a state's interpretation of its own rules or
statutes does not raise a federal constitutional issue unless it
rises to a level of denial of fundamental due process. Redman v.
Dugger, 866 F.2d 387 (11 Cir. 1989); Machin v. Wainwright, 758 F.2d
1431, 1433 (11 Cir. 1985); Carrizales v. Wainwright, 699 F.2d 1053
(11 Cir. 1983). See generally Branan v. Booth, 861 F.2d 1507 (11
Cir. 1988). Federal habeas corpus review of a state law claim is,
therefore, precluded if no due process violations or facts
indicating such violations are alleged. This is true even if the
alleged error is "couched in terms of equal protection and due
process." Id. at 1508, quoting Willeford v. Estelle, 538 F.2d 1194,
1996-98 (5 Cir. 1976). An alleged violation of Fla.R.Crim.P. 3.190
(generally, pretrial motions, such as motions to suppress, are to
be heard by the court before trial court hears evidence) or Florida
caselaw, see e.g., Carter v. State, 428 So.2d 751, 753 (Fla. 2 DCA
1983)(holding that a court is required to hold a hearing on a
motion to suppress evidence prior to commencement of trial, and the
failure to rule on the motion is error), merely raises an issue of
state law and does not involve any issue of federal constitutional
dimension.

Moreover, even if reviewable by this Court, the petitioner is
not entitled to relief on his claim. The courts have consistently
recognized the important role the trial judge plays in the system
of criminal justice. The trial judge has broad power to control the
progress and, within the limits of the adversary system, the shape
of the trial. "[T]he judge is not a mere moderator, but is the
governor of the trial for the purpose of assuring its proper
conduct and of determining questions of law." Quercia v. United
States, 289 U.S. 466, 469-69 (1933). The trial judge must meet
situations as they arise and to do this must have broad power to

23

cope with the complexities and contingencies inherent in the adversary process. See Geders v. United States, 425 U.S. 80, 86-87 (1976) and cases cited therein. To this end, the trial court judge may determine generally the order in which parties will adduce proof, and his determination will be reviewed only for abuse of discretion. Id.

Here, the petitioner cannot establish that his right to a fair trial was compromised by the trial court's failure to hold a separate hearing on the petitioner's suppression motion. Moreover, even if counsel was deficient for failing to seek such a hearing, the petitioner was not prejudiced therefrom. Consequently, he cannot prevail on the claim. No due process or ineffective assistance has been demonstrated in this regard. Therefore, the petitioner's assertions in relation to this claim also warrants no relief.

### Evidentiary Hearing

The petitioner's request for an evidentiary hearing on any or all the claims raised in this federal petition should be denied. To be entitled to an evidentiary hearing on habeas claims, Rogers must allege facts that, if proved at the hearing, would entitle him to relief. See Schriro v. Landrigan, 550 U.S. 465, 474-75, 127 S.Ct. 1933, 1940 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). For reasons discussed herein, an evidentiary hearing is not required for the disposition of this case. Id. See also Atwater v. Crosby, 451 F.3d 799, 812 (11 Cir. 2006)(addressing petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the

court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). The petitioner has failed to demonstrate the existence of any factual dispute that warrants a federal evidentiary hearing.

<u>Conclusion</u>

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 be denied, and the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this <u>23rd</u> day of February, 2011.

UNITED STATES MAGISTRATE JUDGE

cc:  Bobby Byrd, Jr., <u>Pro</u> <u>Se</u>
     DC#K55695
     South Bay Correctional Facility
     P.O. Box 7171
     South Bay, FL 33493-7171
     (address on latest filing)

     Bobby Byrd, Jr., <u>Pro</u> <u>Se</u>
     DC#K55695
     South Bay Correctional Facility
     600 U.S. Highway 27 South
     South Bay, FL 33493
     (address of record)

     Jeanine M. Germanowicz, Ass't Atty Gen'l
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428